UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES PATRICK CRATTY,

Plaintiff,

v.

CITY OF WYANDOTTE,

Defendant.

_____/

Case No. 17-cv-10377

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [# 20]

### I. INTRODUCTION

Presently before the Court is Defendant's Motion for Summary Judgment. Dkt. No. 20. Defendant alleges that Plaintiff has failed to show any policy or custom of malicious prosecution by the City of Wyandotte. For the reasons that follow, the Court will grant Defendant's Motion.

### II. FACTUAL BACKGROUND

This case arises from the stop and arrest of Plaintiff Charles Cratty by Wyandotte police officers. On January 1, 2008, officers Kenneth Groat, Daniel 0Torolski, Todd Scheitz, Michael Sadowski, and Detective Joseph Carr pulled

Plaintiff over on his way home from the grocery store. Dkt. No. 28-5, pg. 28 (Pg. ID 669). Plaintiff alleges that the police officers told him "[w]e don't know what you're getting a ticket for, but you will be getting one." *Id.* Plaintiff alleges another officer told him "[y]ou are going to jail. We're not sure for what yet, but you are going to jail." *Id.* at pg. 36 (Pg. ID 670). At one point, the officers told Plaintiff that they stopped him for failure to signal before turning. *Id.* at pg. 28 (Pg. ID 669). During the stop, the officers searched Plaintiff's vehicle. *Id.* at pg. 29 (Pg. ID 670). The officers then confiscated Plaintiff's cell phone, his oscillating lights, and an invaluable prayer cloth. *Id.* at pg. 30 (Pg. ID 671). Then, the officers arrested Plaintiff and took him into custody. *Id.* They told Plaintiff that they were taking him into custody for failure to signal and for having oscillating lights. *Id.* At the police station, the officers charged Plaintiff with a violation of the safety belt law, failure to signal/observe, no proof of insurance, and driving while license suspended. Dkt No. 20-6, pg. 1, 4, 7, 10 (Pg. ID 251, 254, 25, 2607).

Defendant dismissed the driving while license suspended charge on December 21, 2010. *Id.* at pg. 13 (Pg. ID 263). Defendant dismissed the remaining three charges against Plaintiff on February 11, 2014. *Id.* at pg. 3, 6, 9 (Pg. ID 253, 256, 259). Plaintiff claims that Defendant never returned his cell phone, oscillating lights, or prayer cloth to him.

On February 7, 2017, Plaintiff filed the present action in this Court. Dkt. No. 2. Plaintiff brings a federal malicious prosecution claim, state and federal abuse of process claims, and three state law claims of conspiracy, conversion, and unjust enrichment. Dkt. No. 2, pg. 2–17 (Pg. ID 20–35). Plaintiff only brings suit regarding the three January 1, 2008 charges that Defendant dismissed on February 11, 2014. Dkt. No. 28, pg. 2 (Pg. ID 594). On October 9, 2017, Defendant filed its Motion for Summary Judgment. Dkt. No. 20. Plaintiff opposed the Motion on October 27, 2017. Dkt. No. 28. In his response, Plaintiff noted that he had not gotten the opportunity to depose Wyandotte's Mayor. *Id.* at pg. 5 (Pg. ID 597). Plaintiff argued that deposition of the Mayor would support a finding of a policy or custom of constitutional rights violations. *See id.* Defendant replied to Plaintiff's response on November 10, 2017. Dkt. No. 32. On January 3, 2018, this Court extended the discovery deadline to allow Plaintiff to depose the City of Wyandotte's Mayor, Joseph Peterson. Dkt. No. 34. This Court also allowed supplemental briefing by both parties regarding Mayor Peterson's deposition. *Id.* On January 10, 2018, Plaintiff deposed Mayor Peterson. Dkt. No. 38-3. Plaintiff filed his supplemental brief on February 1, 2018. Dkt. No. 38. Defendant filed its supplemental brief on February 8, 2018. Dkt. No. 39. Defendant argued that Plaintiff still failed to show a policy or custom of constitutional rights violations by Defendant. *Id.*

# III. Legal Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment. The Rule states, "summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). "All factual inferences 'must be viewed in the light most favorable to the party opposing the motion.'" *Id.* (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

# IV. Discussion

## Federal Claims

### *Malicious Prosecution*

Plaintiff's complaint alleges a federal malicious prosecution claim pursuant to 42 U.S.C. § 1983 against a municipality. Dkt. No. 2, pg 2 (Pg. ID 20).

To prevail in a § 1983 claim against a municipality, one must demonstrate: (1) the deprivation of a constitutional right; and (2) that the defendant (municipality)

is liable for the violation. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

### 1. Deprivation of a Constitutional Right

A federal malicious prosecution claim requires a plaintiff to prove four elements. Plaintiff must show that: (1) "a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute;" (2) "a lack of probable cause for the criminal prosecution"; (3) "as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty"; and (4) "the criminal proceeding must have been resolved in the plaintiff's favor." *Skyes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010).

Here, the police officers that arrested Plaintiff on January 1, 2008, initiated a criminal prosecution against Plaintiff. However, the record does not show that there was a lack of probable cause. Plaintiff contends that there was no probable cause. However, a magistrate Judge issued an arrest warrant for Plaintiff on January 3, 2008, stating that there was probable cause. Dkt. No. 20-8, pg. 1 (Pg. ID 266). Plaintiff suffered a deprivation of liberty because he was arrested and spent time in jail. Dkt. No. 28-5, pg. 31 (Pg. ID 672). The criminal proceeding was resolved in Plaintiff's favor because Defendant dismissed all of the January 1, 2008 charges against Plaintiff. Most of the elements of a malicious prosecution claim are met in this case. However, the record does not support a lack of probable cause. In fact, the

record supports a finding that there was probable cause. Therefore, the first prong of a § 1983 claim, showing a constitutional deprivation, has not been met in this case.

## 2. Defendant's Liability for the Violation

Even if Plaintiff can meet the above requirements of prong one, Plaintiff does not meet the requirements of the second prong of a § 1983 claim against a municipality. Therefore, Plaintiff's malicious prosecution claim still fails. The second prong of a § 1983 claim requires the plaintiff to show that Defendant is liable for the constitutional violation. To do this, Plaintiff "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Plaintiff must show one of the following to prove this claim:

> (1) the existence of an illegal official policy or legislative enactment;
> (2) that an official with final decision making authority ratified illegal actions;
> (3) the existence of a policy of inadequate training or supervision; or
> (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (emphasis added)). "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Id.* (quoting *Monell*, 436 U.S. at 694).

Plaintiff does not specify which element of the *Burgess* test he believes precludes summary judgment. Rather, Plaintiff states that his "[c]omplaint illustrates the Defendant's illegal municipal policy, practice and/or custom." Dkt. No. 28, pg. 2 (Pg. ID 594). Therefore, the Court will consider each element.

## A. Element One

Element one requires proof of an illegal official policy or legislative enactment. Nowhere in the record does Plaintiff specifically allege or provide documentation of an official illegal policy. Nor do any documents in the record show that Defendant had an official illegal policy or legislative enactment. Therefore, this Court finds that there is no municipal liability under element one.

## B. Element Two

Element two requires a showing that an official with final decision making authority ratified illegal actions. The record shows that Plaintiff took depositions of the Mayor Pro Tem and the supervisor who was on duty on January 1, 2008.

Joseph Peterson was the Mayor Pro Tem on January 1, 2008—the night that police officers arrested Plaintiff. Dkt. No. 38-3, pg. 4 (Pg. ID 836). In Mayor Peterson's deposition, he stated, "[a]s far as I'm concerned, my police department has always followed the law. I have no knowledge of them never following the law to do something." Dkt. No. 38-3, pg. 10 (Pg. ID 842). No other testimony in Mayor Peterson's deposition shows that he ratified illegal actions. Mayor Peterson was a

former police officer. *Id.* at pg. 3 (Pg. ID 835). In his deposition, he testified that when he pulled someone over for driving while his license was suspended, he may have "three or four other cops around" for backup. *Id.* at pg. 5 (Pg. ID 837). Mayor Peterson also testified that it is within an officer's discretion whether to write a ticket or arrest someone who is driving on a suspended license. *Id.* This testimony does not create a genuine issue that Mayor Peterson ratified illegal actions. Although it may be rare for five police officers to pull someone over for driving with a suspended license, it is not illegal to do so. Additionally, officers have discretion about whether to write a ticket or arrest someone with a suspended license. Therefore, Plaintiff's arrest was not an illegal act that the Mayor ratified. No other facts in Mayor Peterson's deposition could arguably support a finding that the Mayor ratified illegal acts.

In Plaintiff's deposition, he stated that he spoke with Mayor Peterson in December of 2010 regarding the tickets from the 2008 stop and arrest. Dkt. No. 20-15, pg. 13 (Pg. ID 356). Plaintiff stated that the Mayor said he would have the cases dismissed, and that the cases should have been heard awhile ago. *Id.* The City did not dismiss the cases until four years after that conversation, in 2014. *Id.* This testimony from Plaintiff, taken as true, still does not support a finding that Mayor Peterson ratified illegal conduct. It is arguably unacceptable that it took four years for the City to dismiss Plaintiff's charges after Plaintiff's conversation with the

Mayor. However, this does not support a showing that Mayor Peterson ratified illegal acts. No reasonable juror could find that a delay in dropping the charges equates to a ratification of illegal acts, such as malicious prosecution. There are many other reasons, such as administrative delay or backup, and the City did eventually drop the charges against Plaintiff.

Plaintiff also deposed Lieutenant Terence Reed. Lieutenant Reed was either a sergeant or a lieutenant at the time of Plaintiff's January 1, 2008 arrest, although he does not specifically recall. Dkt. No. 38-8, pg. 5 (Pg. ID 903). Regardless, Lieutenant Reed was the supervisor of officers Groat, Torolski, Scheitz, Carr, and Sadowski on January 1, 2008. *See id.* at pg. 8 (Pg. ID 906). Therefore, he had some decision making authority that properly makes him a subject of this analysis.

In his deposition, Lieutenant Reed stated that he did not know why five police officers were on the scene to arrest Plaintiff on January 1, 2008. *Id.* at pg. 10 (Pg. ID 908). Reed also testified that he did not recall having any conversations with any of the five officers on duty that night about whether they should arrest Plaintiff or just give him a ticket. *Id.* at pg. 9 (Pg. ID 907). Reed stated that the only way he would know if his officers arrested someone was if/when the arrestee was brought into the police station and booked. *Id.* at pg. 7–8 (Pg. ID 905–06). These facts, taken together, do not create a genuine dispute about whether Lieutenant Reed ratified illegal acts. Reed stated that he did not recall having any conversations with any officers

regarding Mr. Cratty's arrest. Nor would Reed know if officers arrested Cratty until the officers brought Cratty into the police station and booked him. Nothing in Reed's deposition shows that Reed had or should have had any knowledge of officers partaking in illegal actions. No reasonable juror could conclude from Reed's testimony that he ratified any illegal acts.

In conclusion, Plaintiff has not shown that an official with final decision making authority ratified illegal acts. Therefore, this Court finds that there is no municipal liability under element two.

### C. Element Three

To succeed on a failure to train or supervise claim in the Sixth Circuit, Plaintiff must prove the following:

> (1) the training or supervision was inadequate for the tasks performed;
> (2) the inadequacy was the result of the municipality's deliberate indifference; and
> (3) the inadequacy was closely related to or actually caused the injury.

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

Plaintiff does not explicitly argue that Defendant is liable because it failed to properly train its officers regarding malicious prosecution. *See* Dkt. No. 20, 38. At most, Plaintiff appears to argue that Defendant failed to train its police officers to write a thorough police report.

Plaintiff states that none of the police officers present at his January 1, 2008 arrest could determine from the police report which officer witnessed his alleged failure to signal. Dkt. No. 28, pg. 5–6 (Pg. ID 597–98). Plaintiff's depositions of the officers Groat, Torolski, Scheitz, Carr, and Sadowski prove that his claim is true. *See* Dkts. No. 28-5, pg. 5 (Pg. ID 646); No. 20-11, pg. 3 (Pg. ID 301); No. 20-12, pg. 3 (Pg. ID 312); No. 20-13, pg. 3 (Pg. ID 321); No. 20-14, pg. 3 (Pg. ID 334). Plaintiff also appears to be arguing that the police officers were not properly trained on including their traffic stop location in police reports. *See id.*

The record does not clearly show that the training on drafting a police report was inadequate for the tasks performed. In Detective Carr's deposition, he stated that the City of Wyandotte Police Department trained him to include in a police report all the facts about the location of the vehicle at the time of a traffic stop. Dkt. No. 20-12, pg. 3 (Pg. ID 312). Officer Groat stated that the City did not train him to put this information in a police report. Dkt. No. 20-13, pg. 3 (Pg. ID 321). Officer Sadowski testified that the City trained him to "put in all facts" in a police report. Dkt. No. 20-14, pg. 4 (Pg. ID 335). Officer Torolski stated that the City taught him to put all the facts into a police report, but "sometimes people make mistakes." Dkt. No. 3, pg. 11, (Pg. ID 301). Mayor Peterson stated that he was trained to put his vehicle's location and if he was stationary or not in a police report. Dkt. No. 38-3, pg. 11 (Pg. ID 843). These statements do not create an issue of material fact about

whether there was adequate training on drafting a police report. The record indicates that the City of Wyandotte does train its officers to draft a thorough police report. However, depending on the circumstances of an incident and the officer, that officer may not include every detail. From the record, it appears that human error is also a factor in how someone writes a police report.

Even if the record does arguably show inadequate training, there must be a showing of Defendant's deliberate indifference to succeed on a failure to train/supervise theory. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Regets v. City of Plymouth*, 568 Fed. App'x. 380, 394 (6th Cir. 2014) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). There are two ways to demonstrate deliberate indifference. Plaintiff could "show prior instances of unconstitutional conduct demonstrating that the [City of Wyandotte] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). In the alternative, Plaintiff could show "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation . . . ." *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 409).

The record here does not prove either of the above methods of finding deliberate indifference. Writing an insufficient police report is not unconstitutional conduct. It is also not a single violation of federal rights. A reasonable juror could not find deliberate indifference on the basis of writing an insufficient police report. As stated earlier, the Plaintiff does not argue that Defendant failed to adequately train/supervise in any other way. Therefore, this Court holds that there is no municipal liability under element three.

### D. Element Four

Element four requires Plaintiff to show a custom of tolerance or acquiescence of federal rights violations. In his affidavit, Plaintiff stated that on two separate occasions, he attempted to file a complaint with the Wyandotte Police Department. Dkt. No. 28-5, pg. 26 (Pg. ID 667). Plaintiff complained that the City officers should not have ticketed him, and he alleged malicious prosecution, abuse of process, and criminal fraud. *Id.* Plaintiff stated the officer at the front desk refused to take his complaint on both occasions. *Id.* Five months after he attempted to make these complaints, police officers stopped and arrested him on January 1, 2008. *Id.* at pg. 27 (Pg. ID 668).

Plaintiff's affidavit appears to be articulating a claim of municipal liability based on an "inaction theory"—where there is an unwritten policy of tolerating federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.

2005). To show municipal liability on the basis of an inaction theory, a plaintiff must

show:

> (1) the existence of a clear and persistent pattern of [illegal activity];
> (2) notice or constructive notice on the part of the [defendant];
> (3) the [defendant's] tacit approval of the unconstitutional conduct, such that
> their deliberate indifference in their failure to act can be said to amount to an
> official policy of inaction; and
> (4) that the [defendant's] custom was the "moving force" or direct causal
> link in the constitutional deprivation.

*Id.*

In this case, the record does not reflect the existence of a clear and persistent

pattern of illegal activity. Plaintiff's affidavit states that he attempted to file

complaints about prior tickets that he received from the Wyandotte Police

Department. Dkt. No. 28-5, pg. 26 (Pg. ID 667). Plaintiff also attempted to allege

malicious prosecution and abuse of process in these complaints. *Id.* Wyandotte

police officers previously gave Plaintiff tickets for having tinted windows and

driving with a suspended license. *Id.* at pg. 22 (Pg. ID 663). These tickets do not

evidence a clear and persistent pattern of illegal activity. Plaintiff bought a car with

tinted windows from a man who bought the car as-is from the City of Wyandotte

Police Department at an auction. *Id.* at pg. 21. Although the police never cited or

ticketed the previous owner of the car for tinted windows, Plaintiff got ticketed for

having tinted windows when he drove the car on May 22, 2007. *Id.* Plaintiff's

ticket for having tinted windows is arguably unfair, but it does not rise to the level

of showing a clear and persistent pattern of malicious prosecution. Police also ticketed Plaintiff for driving with a suspended license. *Id.* at pg. 22 (Pg. ID 663). Plaintiff stated that he told the officer that the cases which resulted in the suspension were resolved, and Plaintiff just needed to pay his clearance fees. *Id.* However, the officer still charged him with driving with a suspended license and took him to jail. *Id.* Plaintiff also stated that this officer told him, "I know who you are and you're going to jail." *Id.*

Although the actions of the police officer are arguably harsh, these actions do not show the existence of a clear and persistent pattern of malicious prosecution. When the officer pulled Plaintiff over, Plaintiff still had a driving with a suspended license charge that was in the system. Even though the police officer may have been insensitive toward Plaintiff, the officer charged and arrested Plaintiff for a legitimate reason. This cannot establish a clear pattern of rights violations that warrants holding the City of Wyandotte liable. Taken together, these two incidents still do not show a clear and persistent pattern of illegal activity. On both occasions where Plaintiff got tickets and/or was arrested, it was pursuant to a legitimate legal action. The officers could have acted differently and chosen not to ticket or arrest Plaintiff in these situations. However, they were not required to act differently than they did. For these reasons, a reasonable juror could not find that the previous tickets and arrest show a clear and persistent pattern of illegal activity.

The next element of the inaction theory test requires the defendant to have notice or constructive notice of the pattern of rights violations. Because this Court holds that element one of the inaction theory test has not been met, element two must also fail.

Element three of the inaction theory test requires the defendant's tacit approval of the unconstitutional conduct. This Court has held that there was no clear pattern of unconstitutional conduct, so there was no unconstitutional conduct for Defendant to tacitly approve. Therefore, element three is not met.

The last element of the inaction theory test requires that the defendant's custom was the moving force or direct cause for the constitutional deprivation. Here, no such causation exists. The record fails to establish that Defendant had a custom of malicious prosecution. Additionally, the record does not establish that a custom of Defendant's caused Plaintiff's alleged constitutional deprivation.

In conclusion, the Court holds that the record does not establish enough facts to create a genuine issue of material fact about municipal liability. Plaintiff cannot show liability through any of the four approaches from the *Burgess* test. Plaintiff also did not establish that there is a genuine issue of material fact regarding malicious prosecution because there was probable cause to arrest him. Therefore, this Court will grant summary judgment in favor of Defendant on Plaintiff's Count I of malicious prosecution.

***Abuse of Process***

Plaintiff's complaint alleges a federal abuse of process claim against a municipality. Dkt. No. 2, pg 10 (Pg. ID 28). The Sixth Circuit has not yet recognized abuse of process as a federal claim that plaintiffs are allowed to bring pursuant to § 1983. *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 676 (6th Cir. 2005). However, if this claim is cognizable, the elements to prove this claim "would likely mirror those of state law." *Id.* As stated above, for Plaintiff to succeed in a § 1983 claim against Defendant, he must demonstrate: (1) the deprivation of a constitutional right; and (2) that the defendant (municipality) is liable for the violation. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). It is unlikely that a federal abuse of process claim exists in this circuit. However, even if the claim does exist, Plaintiff has not made a sufficient showing to prove the claim.

### 1. Deprivation of a Constitutional Right

"To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Lawrence v. Burdi*, 886 N.W.2d 748, 754 (Mich. Ct. App. 2016). In his supplemental brief, Plaintiff argues that he was the only person ticketed for tinted windows by Officer Fitzpatrick in 2007. Dkt. No. 38, pg. 2 (Pg. ID 814). Plaintiff also stated that he was the only person cited

for failure to use his signal turn by Officer Scheitz in six months. *Id.* at pg. 3 (Pg. ID 815). Plaintiff stated that none of the police officers that arrested him on January 1, 2008 wrote any other citations on their shifts. *Id.* These statements, taken as true, do not create a genuine issue of fact regarding an ulterior purpose. Just because Plaintiff was the only person cited in various respects does not mean that it was because the officers had an ulterior purpose. At most, Plaintiff's statements do not amount to a finding of ulterior purpose. Moreover, they do not reach the level of supporting a claim of ulterior purpose.

Plaintiff stated in his affidavit that on January 1, 2008 that the officers who arrested him said, "I don't know what you are going to receive a ticket for but you are going to receive a ticket." Dkt. No. 28-5, pg. 23–24 (Pg. ID 664–65). The officers also told him, "you think you're smart, don't you?" *Id.* Officer Hunter said to Plaintiff, "[y]ou're days are numbered. You're not going to make it in this town. This is my town." *Id.* These statements, taken as true, do create a genuine issue of material fact about ulterior purpose. A reasonable juror could take these statements and believe the officers were ticketing and arresting Plaintiff for non-legitimate reasons, like running Plaintiff out of town.

The next element in an abuse of process claim is showing an act in the use of process that is improper in the regular prosecution of the proceeding. The abuse of process action is "for the improper use of process after it has been issued, not for

maliciously causing it to issue." *Lawrence v. Burdi*, 886 N.W.2d 748, 754 (Mich. Ct. App. 2016). A regular use of process with bad intentions is not actionable, but subsequent misuse after proper issuance may be actionable. Larsen, Sonja. 24 Michigan Civil Jurisprudence § 22 (2018). A court should determine the manner of the use and not the intention when evaluating this claim. *Id.* In his complaint, Plaintiff states that Defendant abused the legal process "by purposely prolonging and delaying legal proceedings." Dkt. No. 2, pg. 11 (Pg. ID 29). There is no evidence in the record that Defendant purposely prolonged and delayed Plaintiff's legal proceedings. The record does not demonstrate any reason for the delay in dropping the charges. The record only reflects Plaintiff's opinion that Defendant purposely delayed his legal proceedings. Therefore, based on the record, there is no actionable abuse of process.

Plaintiff argued in his response that the act of the police filing a false police report meets the improper act requirement. *See* Dkt. No. 21 (Pg. ID 613). In *Chancellor v. City of Detroit*, this Court held that the defendants knowingly filed a false police report, which met the improper act requirement. 454 F. Supp. 2d 645, 664 (E.D. Mich. 2006). Here, Plaintiff claims that the police knowingly filed a false police report. However, the arrest warrant issued by the magistrate judge negates Plaintiff's opinion testimony. So the record still does not sufficiently show an abuse of process claim.

## 2. Defendant's Liability for the Violation

Even if there was abuse of process by the police officers, Plaintiff does not meet the requirements of the second prong of a § 1983 claim against a municipality. Therefore, Plaintiff's abuse of process claim still fails. The second prong of a § 1983 claim requires the plaintiff to show that Defendant, a city, is liable for the abuse of process. To do this, Plaintiff "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). As stated in the malicious prosecution discussion, Plaintiff must show one of the following to prove this claim:

> (1) the existence of an illegal official policy or legislative enactment;
> (2) that an official with final decision making authority ratified illegal actions;
> (3) the existence of a policy of inadequate training or supervision; or
> (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (emphasis added)). "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Id.* (quoting *Monell*, 436 U.S. at 694).

### A. Element One

Element one requires the existence of an illegal official policy or legislative enactment. The record in this case does not support a claim that there was an official

illegal policy. The Plaintiff also does not allege that Defendant had an official illegal policy or legislative enactment. Therefore, element one does not show municipal liability.

## B. Element Two

Element two requires that an official ratified illegal actions. The record does not reflect that any official ratified abuse of process. Neither Mayor Peterson nor Lieutenant Reed gave testimony that could lead a reasonable juror to conclude that they approved of anything illegal. *See* Dkts. No. 38-3, 38-8. The four-year delay to dismiss the actions against Plaintiff after Plaintiff's discussion with Mayor Peterson is also not sufficient to meet element two. The record does not provide any evidence that the Mayor ratified the length of time that it took to dismiss the actions. As stated in the malicious prosecution discussion, Lieutenant Reed did not discuss Plaintiff's ticketing and arrest with the officers. The record does not provide any evidence to support a finding that Lieutenant Reed ratified any improper actions that the officers may have taken on January 1, 2008. For these reasons, there is no municipal liability under element two.

## C. Element Three

Element three requires Plaintiff to show that Defendant had a policy of inadequate training or supervision. Plaintiff does not explicitly allege that Defendant

had inadequate training or supervision regarding abuse of process. Nor does the record present any evidence that supports this finding. As mentioned above, Plaintiff's inadequate training argument focuses on writing police reports. The record does not reflect that Defendant was deliberately indifferent about police report training. Nor does it show that inadequate police report training caused abuse of process. The record shows that any insufficient police report that the police wrote was likely caused by human variance or error. Therefore, there is no municipal liability under element three.

### D. Element Four

Element four requires showing a custom of tolerance or acquiescence of federal rights violations. As stated in the malicious prosecution discussion, element four is not met under an inaction theory because there is no clear pattern of illegal activity. Nothing else in the record supports a finding that Defendant tolerated violations of federal rights. Therefore, there is no municipal liability under element four.

In conclusion, Sixth Circuit precedent does not recognize a federal abuse of process claim. However, if the claim is recognized, the evidence in this case does not support a finding of abuse of process. There is not enough evidence for a reasonable juror to conclude that there was abuse of process and that Defendant is

responsible for it. Therefore, this Court will grant Defendant's Motion on Plaintiff's federal abuse of process claim.

## **State Law Claims**

In Counts II–V of his complaint, Plaintiff alleges state claims of abuse of process, conspiracy, conversion, and unjust enrichment. Dkt. No. 2, pg. 10–17 (Pg. ID 28–35).

Pursuant to 28 U.S.C. § 1367, district courts may exercise supplemental jurisdiction over state law claims. However, "supplemental jurisdiction is discretionary, not mandatory." *Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir. 2011). A district court may decline to exercise supplemental jurisdiction when:

> (1) the claim raises a novel or complex issue of state law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) *the district court has dismissed all claims over which it has original jurisdiction*, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

> 28 U.S.C. § 1367(c) (emphasis added); *Hucul Advert., LLC v. Charter Twp. Of Gaines*, 748 F.3d 273, 281 (6th Cir. 2014).

In this case, the Court has granted summary judgment in favor of the Defendant on both of Plaintiff's federal claims. Therefore, this Court has dismissed all claims over which it has original jurisdiction. Pursuant to 28 U.S.C. § 1367(c), this Court declines supplemental jurisdiction over

Plaintiff's state law claims of abuse of process, conspiracy, conversion, and unjust enrichment. The Court dismisses these counts without prejudice.

## V. CONCLUSION

For the reasons discussed herein, the Court will grant Defendant's Motion for Summary Judgment. Plaintiffs state law claims are dismissed without prejudice.

Dated:  February 21, 2018                        /s/Gershwin A. Drain
                                                 GERSHWIN A. DRAIN
                                                 United States District Judge